**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

ANDREA K.,

       *Plaintiff,*

v.

COMMISSIONER OF SOCIAL
SECURITY,

       *Defendant.*

_____/

Case No. 1:25-cv-12783

Patricia T. Morris
United States Magistrate Judge

**MEMORANDUM OPINION AND ORDER ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 15)**

## I.    CONCLUSION

For the reasons set forth below, Plaintiff's motion for summary judgment (ECF No. 13) is **DENIED**, the Commissioner of Social Security's motion for summary judgment (ECF No. 15) is **GRANTED**, and the decision of the administrative law judge (ALJ) is **AFFIRMED**.

## II.    ANALYSIS

### A.    Introduction and Procedural History

On May 25, 2021, Plaintiff filed an application for supplemental security income and disability insurance benefits, alleging disability beginning on March 13, 2021. (ECF No. 7-1, PageID.41).  The Commissioner initially denied the application

1

on September 30, 2021, and on reconsideration on July 19, 2022. (*Id.*). Plaintiff then requested a hearing before an ALJ, which was held on July 18, 2024. (*Id.*). The ALJ issued a written decision on August 9, 2024, finding Plaintiff was not disabled. (*Id.* at PageID.41–55). Following the ALJ's decision, Plaintiff requested review from the Appeals Council, which denied the request on July 1, 2025. (*Id.* at PageID.24–26).

Following the Appeals Council's denial of review, Plaintiff sought judicial review on September 3, 2025. (ECF No. 1). The parties consented to the Undersigned "conducting any or all proceedings in this case, including entry of a final judgment and all post-judgment matters." (ECF No. 11). The parties have since filed cross-motions for summary judgment for which briefing is complete. (ECF Nos. 13, 15, 16).

### B.   Standard of Review

District courts have jurisdiction to review the Commissioner's final administrative decisions pursuant to 42 U.S.C. § 405(g). The review is restricted solely to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (citation modified). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th

Cir. 2007) (citation modified). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified).

A district court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). Courts will "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* (citation modified).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

(i) At the first step, [the ALJ] consider[s] [the claimant's] work activity, if any. If [the claimant is] doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.

(ii) At the second step, [the ALJ] consider[s] the medical severity of [the claimant's] impairment(s). If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [the claimant is] not disabled.

(iii) At the third step, [the ALJ] also consider[s] the medical severity of [the claimant's] impairment(s). If [the claimant has] an impairment(s) that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement, [the ALJ] will find that [the claimant is] disabled.

(iv) At the fourth step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . past relevant work. If [the claimant] can still do . . . past relevant work, [the ALJ] will find that [the claimant is] not disabled.

(v) At the fifth and last step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . age, education, and work experience to see if [the claimant] can make an adjustment to other work. If [the claimant] can make an adjustment to other work, [the ALJ] will find that [the claimant is] not disabled. If [the claimant] cannot make an adjustment to other work, [the ALJ] will find that [the claimant is] disabled.

20 C.F.R. § 404.1520(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing his or her residual functional capacity (RFC), which "is the most [the claimant] can still do despite [his or her] limitations," and is assessed using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 214 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ determined Plaintiff was not disabled. (ECF No. 7-1, PageID.55). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 13, 2021, the alleged onset date. (*Id.* at PageID.44). At step two, the ALJ found the following severe impairments: degenerative disc disease of the lumbar and cervical spines; post-

laminectomy syndrome lumbar spine; radiculopathy; bilateral carpal tunnel syndrome; fibromyalgia; seizure disorder; migraines; cervicalgia; post-concussion syndrome; adjustment disorder; anxiety; depression; PTSD; personality disorder; and polysubstance use disorder. (*Id.*).

At step three, the ALJ found none of the impairments, either independently or in combination, met or medically equaled in severity or duration the criteria of any listing. (*Id.* at PageID.45–47). Next, the ALJ found Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally stoop, kneel, crouch, or crawl; frequently balance; frequently handle objects and finger; occasional overhead reaching; must avoid concentrated exposure to vibration and wetness; exposure up to a moderate noise level; no work in direct sunlight; must avoid all use of hazardous moving machinery; must avoid all exposure to unprotected heights; must avoid concentrated exposure to rough, uneven, slippery, shifting, or obstructed terrain; no driving a motor vehicle as a work duty; limited to simple routine repetitive tasks performed in a work environment free of fast paced production requirements, such as assembly line work, involving only simple work related decisions and routine workplace changes with only occasional interaction with the public, coworkers, and supervisors. Limitations are as defined in the Selected Characteristics of Occupations of the DOT, where definition present.

(*Id.* at PageID.47–48).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.54). However, at step five, the ALJ found other jobs in the national economy that Plaintiff could perform. (*Id.*). Specifically, the ALJ found Plaintiff could perform the requirements of a marker (40,000 jobs in the national

6

economy), an office helper (7,500), and a routing clerk (50,000). (*Id.*). The ALJ thus concluded Plaintiff was "not disabled." (*Id.* at PageID.55).

### E.    Administrative Record

Plaintiff raises two issues on appeal. First, she argues the ALJ erred by failing to properly evaluate two medical opinions. Second, she argues the ALJ erred when evaluating her subjective reports of symptoms. While the Court has reviewed the entire record, it will only summarize the evidence relevant to Plaintiff's issues on appeal.

Plaintiff has struggled with back pain since 2020. (ECF No. 13, PageID.1396). CT scans and x-rays of her spine have shown progressive spondylosis and disc disease and she has had prior spine surgeries which have resulted in increased disc material. (ECF No. 7-1, PageID.674–76, 694, 1373–74). Among other things, she treats her pain with epidural steroid injections and nerve blocks. (*E.g.*, *id.* at PageID.534, 635, 661, 672).

Plaintiff has also reported seizure-like activity, waking up with confusion and a headache, which was preceded by stress and a lack of sleep for four days. (*Id.* at PageID.1029). An EEG showed left temporal sharp activity consistent with left temporal dysfunction with lowered threshold for seizure activity as seen in complex partial seizure. (*Id.* at PageID.1027).

Dr. Scott Lazzara conducted a consultative physical exam of Plaintiff in

September 2021. (*Id.* at PageID.692–98). Plaintiff had recently injured her left foot and was wearing a walking boot for the exam. (*Id.* at PageID.694). Plaintiff reported being able to do her activities of daily living including chores and shopping but took frequent breaks due to pain. (*Id.*). Her grip strength was intact, dexterity unimpaired, she had no difficulty getting on or off the exam table, straight leg raising was negative, and she had no difficulty standing on her right foot. (*Id.* at PageID.695). However, she had mild difficulty squatting and was unable to heel and toe walk or stand on her left foot. (*Id.*). Her rotational range of motion in her cervical spine and her extension and lateral flexion in her lumbar spine was slightly below normal. (*Id.* at PageID.695–96). Her muscle tone was normal but her strength in her left ankle was 4/5 and she walked with a mild left limp. (*Id.* at PageID.697). Ultimately, Dr. Lazzara concluded:

> The patient has residual mild neuropathy in the lower extremities at L4 and L5. Her power is stable. She is able to perform orthopedic maneuvers and her range of motion is relatively well preserved. She walks with a mild left limp but this is due to her walking boot due to her foot injury. Her upper extremities appear stable. At this point anti-inflammatories and activity as tolerated would be advised.

(*Id.* at PageID.698). He further opined Plaintiff could occasionally squat, bend, and stoop and could climb stairs with assistance. (*Id.* at PageID.692). He also checked that Plaintiff could carry, push, and pull but added an illegible comment next to it. (*Id.*).

As relevant here, state agency medical consultants also explained their

opinion of moderate limitations in interacting with the general public or coworkers: "She is able to tolerate supervisors, coworkers, and the general public in a work environment where interactions are brief, superficial, and task-oriented." (*Id.* at PageID.163, 178). Other evidence will be discussed below as necessary.

**F.    Governing Law**

The ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B).  The regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources.  An acceptable medical source means a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor);

(2) Licensed psychologist, which includes:

    (i)    A licensed or certified psychologist at the independent practice level; or

    (ii)    A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4) Licensed podiatrist for impairments of the foot, or foot and ankle

only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5) Qualified speech-language pathologist for speech or language impairments only.  For this source, *qualified* means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language Pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only . . . ;

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice . . . ; or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice . . . .

20 C.F.R. § 404.1502(a) (2021).  A medical source is

an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

*Id.* § 404.1502(d).  In contrast, a nonmedical source is "a source of evidence who is not a medical source."  *Id.* § 404.1502(e).  "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and

10

(4) Family members, caregivers, friends, neighbors, employers, and clergy." *Id.*

The Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Id.* § 404.1520c(a). "The most important factors [the SSA] consider[s] when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.* § 404.1520c(c).

The first factor is "supportability." For this factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the opinion. In essence, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the source's "[r]elationship with the claimant." *Id*. § 404.1520c(c)(3).  This factor includes analysis of:

(i)  Length of the treatment relationship.  The length of time a medical source has treated [the claimant] may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(ii)  Frequency of examinations.  The frequency of [the claimant's] visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(iii)  Purpose of the treatment relationship.  The purpose for treatment [the claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(iv)  Extent of the treatment relationship.  The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(v)  Examining relationship.  A medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder.

*Id.*

The fourth factor of the SSA's analysis is "specialization."  In making this determination, the SSA will consider

[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior

12

administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

*Id.* § 404.1520c(c)(4).

Finally, the SSA will consider "other factors." These may include any other information that "tend[s] to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(5). Other factors include "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, [it] will also consider whether new evidence [it] receive[s] after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement,

> [b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate

13

how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

*Id.* § 404.1520c(b)(1).  The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually."  *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors [the SSA] consider[s] when [it] determine[s] how persuasive [it] find[s] a medical source's medical opinions or prior administrative medical findings to be."  *Id.* § 404.1520c(b)(2).  As such, the SSA

will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision.  [The SSA] may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [it] articulate[s] how [it] consider[s] medical opinions and prior administrative medical findings in [the claimant's] case record.

*Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported," and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions or prior

14

administrative medical findings in [the claimant's] determination or decision." *Id.* § 404.1520c(b)(3). The regulations clarify that the SSA is "not required to articulate how [it] considered evidence from nonmedical sources using the requirements of paragraphs (a)–(c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c." *Id.* § 404.1520b(c). The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities"; "[d]isability examiner findings," meaning "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [the claimant is] disabled"; and "[s]tatements on issues reserved to the Commissioner[,]" including

    (i)    Statements that [the claimant is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work;

    (ii)    Statements about whether or not [the claimant has] a severe impairment(s);

    (iii)    Statements about whether or not [the claimant's] impairment(s) meet the duration requirement . . . ;

    (iv)    Statements about whether or not [the claimant's] impairment(s) meets or medically equals any listing in the Listing of Impairments . . . ;

(v)     Statements about what [the claimant's] residual functional capacity is using [the SSA's] programmatic terms about the functional exertional levels . . . instead of descriptions about [the claimant's] functional abilities and limitations . . . ;

(vi)    Statements about whether or not [the claimant's] residual functional capacity prevents [the claimant] from doing past relevant work . . . ;

(vii)   Statements that [the claimant] [does] or [does] not meet the requirements of a medical-vocational rule . . . ; and

(viii)  Statements about whether or not [the claimant's] disability continues or ends when [the SSA] conduct[s] a continuing disability review.

*Id.* § 404.1520b(c)(3).

The regulations also provide that

[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on [the SSA] and is not [its] decision about whether [the claimant is] disabled or blind under [SSA] rules.

*Id.* § 404.1504.   Therefore, the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." *Id.*  The SSA will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it] receive[s] as evidence in [a] claim . . . ." *Id.*

16

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f).  Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms)." *Id.* § 404.1502(g).  Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.*  Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," which "include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain:

> In determining whether [the claimant is] disabled, [the SSA will] consider all [the claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  [The SSA] will consider all [the claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or

17

nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [his or her] ability to work.

*Id.* § 404.1529(a). But the SSA clarified that

statements about [the claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

*Id.* Further, "[i]n evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the SSA] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]." *Id.* The SSA will "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [it] will carefully consider any other information [the claimant] may submit about [his

18

or her] symptoms." *Id.* § 404.1529(c)(3).  This other information may include "[t]he information that [the claimant's] medical sources or nonmedical sources provide about [the claimant's] pain or other symptoms," such as "what may precipitate or aggravate [the claimant's] symptoms, what medications, treatments or other methods [the claimant uses] to alleviate them, and how the symptoms may affect [the claimant's] pattern of daily living," which "is also an important indicator of the intensity and persistence of [the claimant's] symptoms." *Id.*

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . [The SSA] will consider all of the evidence presented, including information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] medical sources, and observations by [the SSA's] employees and other persons.

*Id.*  Factors relevant to a claimant's symptoms, such as pain, include:

(i)    [D]aily activities;

(ii)   The location, duration, frequency, and intensity of . . . pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)    Treatment, other than medication, . . . received for relief of . . . pain or other symptoms;

(vi)   Any measures . . . used to relieve . . . pain or other symptoms.

*Id.*

The new regulations also impose a duty on the claimant: "[i]n order to get benefits, [the claimant] must follow treatment prescribed by [his or her] medical source(s) if this treatment is expected to restore [his or her] ability to work."  *Id.* § 404.1530(a).  Stated differently, "[i]f [the claimant does] not follow the prescribed treatment without a good reason, [the SSA] will not find [the claimant] disabled or, if [the claimant is] already receiving benefits, [the SSA] will stop paying . . . benefits."  *Id.* § 404.1530(b).  Acceptable (or "good") reasons for failure to follow prescribed treatment include:

(1)   The specific medical treatment is contrary to the established teaching and tenets of [the claimant's] religion;

(2)   The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)   Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)   The treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for [the claimant]; or

(5)   The treatment involves amputation of an extremity, or a major part of an extremity.

*Id.* § 404.1530(c).

### G. Argument and Analysis

As discussed above, Plaintiff first argues the ALJ erred by failing to properly evaluate medical opinions. Second, she argues the ALJ erred when evaluating her subjective reports of symptoms.

### 1. Opinion Evidence

Plaintiff first argues the ALJ erred in his analysis of the supportability and consistency of several medical opinions. This argument is not persuasive.

As a refresher, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ must explain his or her approach with respect to supportability and consistency when considering a medical opinion. *Id*. § 404.1520c(b). For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

21

Importantly,

> The new regulation substantially reduces the ALJ's obligation to explain the basis for his or her assessment of medical opinions:
>
>> [Source-level articulation.]   Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record.   Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.   We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

*Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (quoting 20 C.F.R. § 404.1520c(b)(1)); *see also Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. 2022) ("Even for a medical opinion, there is no requirement to cite to every piece of evidence or conclusion.").

First, Plaintiff argues the ALJ's limitation on "only *occasional* interaction with the public, coworkers, and supervisors" was inconsistent with the state agency psychological consultants' limitation—which the ALJ found persuasive—that Plaintiff "is able to tolerate supervisors, coworkers, and the general public in a work

environment where interactions are *brief, superficial, and task-oriented*." (ECF No. 13, PageID.1404 (citing ECF No. 7-1, PageID.48, 163, 178) (emphasis changed)). Specifically, Plaintiff argues that a limitation to "occasional" social interaction is inconsistent with a finding that a claimant is only capable of brief, superficial interactions with others. (*Id.* at PageID.1405 (citing *Runyon v. Comm'r of Soc. Sec.*, No. 2:20-cv-3820, 2021 WL 3087639, at *4 (S.D. Ohio July 22, 2021), *report and recommendation adopted*, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021); *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-cv-339, 2020 WL 3866855, at *4 (S.D. Ohio July 9, 2020), *report and recommendation adopted*, 2020 WL 4334920 (S.D. Ohio July 28, 2020); *Clampit v. Comm'r of Soc. Sec.*, No. 3:20-cv-1014, 2021 WL 3174111, at *2 (N.D. Ohio July 26, 2021))).

The Court declines to follow *Runyon*, *Hutton*, and *Clampit* in this case. First, they are merely persuasive authority—not binding authority. *E.g.*, *Lawler v. Trinity Fin. Servs.*, No. 22-cv-2112, 2024 WL 3890675, at *7 n.6 (S.D. Ohio Aug. 21, 2024). Second, even the Southern District of Ohio, which decided the cases Plaintiff now relies upon, has discussed the conflicting caselaw on this point and some judges in the district have reached the opposite conclusion. *See, e.g.*, *Stephen D. v. Comm'r of Soc. Sec.*, 734 F. Supp. 3d 729 (S.D. Ohio 2024); *accord Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("In their assessments, both psychologists stated that Reeves is moderately limited in his ability to interact

23

appropriately with the public and is 'able to relate to a few familiar others on a *superficial* basis.'   In addition, Dr. Shamberg stated that Reeves had marked limitations in his ability to relate to others.  The ALJ, in his mental RFC assessment, *accounted for these limitations* in social interaction by limiting Reeves to 'only *occasional* interaction with the public.' . . .   [T]he ALJ's mental RFC . . . is *not inconsistent with* either of the state agency psychologists' opinions." (citation modified)).  Most importantly, the cases Plaintiff relies on discuss an issue Plaintiff does not address on the record before this Court: whether the term occasionally is a quantitative term and the term superficially is a qualitative term, meaning both limitations are distinct and could be appropriate in some cases.

Plaintiff's argument here, that the ALJ rejected a limitation he deemed persuasive without explanation, is incorrect.  Instead, the record shows that the terms were used interchangeably and not differentiated by the ALJ or the psychologists.  A closer reading of the state agency psychologists' opinions shows that even they used the terms "occasionally" and "superficially" interchangeably.  For example, in their psychiatric review, both state agency psychologists discussed the ALJ's decision from Plaintiff's prior disability claim.  The prior ALJ also limited Plaintiff to "only occasional interaction with the public, coworkers, and supervisors." (ECF No. 7-1, PageID.173).  Both psychologists concluded:

> New evidence was presented which did not support any significant improvement or worsening i [sic] the claimant's condition since the

[prior] ALJ decision.  The new evidence received was *not material to require change* to the ALJ decision.  Therefore, *adoption of the ALJ decision is applicable.*  Per the ALJ, she is "limited to . . . only occasional interaction with the public, coworkers, and supervisors."

(*Id.* at PageID.159, 174 (emphasis added)).  Then, in the RFC, the state agency psychologists went on to explain the moderate limitations in interacting appropriately with others by saying Plaintiff "is only able to tolerate supervisors, coworkers, and the general public in a work environment where interactions are brief, superficial, and task-oriented." (*Id.* at PageID.163, 178).  Thus, it is clear that even the state agency psychologists were using the terms interchangeably.

Ultimately, the psychologists deemed it appropriate to adopt the prior ALJ's limitations on occasional interactions and thus opined that brief, superficial reactions were appropriate.  Therefore, the psychologists clearly thought the limitations were consistent.  *See Stephen D.*, 734 F. Supp. 3d at 739–40 ("[E]ven if it *could be* the case that 'superficial interactions' and 'occasional interactions' are meaningfully different such that the ALJ must explain a change from the former (in a medical opinion) to the latter (in stating the mental RFC), [the plaintiff] has not shown that it *is* the case here." (emphasis in original)).  Plaintiff has not shown that the ALJ's use of the term occasionally conflicts with the state agency psychologists use of the terms occasionally and superficially.

Next, Plaintiff argues the ALJ erred in his assessment of consultative examiner Dr. Lazzara's opinion, summarized above.  (ECF No. 13, PageID.1407).

25

The ALJ first indicated "[t]he area marked push/pull/carry seems to indicate 15 pounds, but the handwriting is somewhat illegible and therefore not fully persuasive." (ECF No. 7-1, PageID.52).  The ALJ then found the opinion partially persuasive, explaining that the record supported further and more detailed functional limitations than opined.  (*Id.*).  The ALJ thus included some additional limitations beyond what Dr. Lazzara opined.  (*Id.* at PageID.47–48).  Plaintiff argues that although the notation next to push, pull, and carry was mostly illegible, "the number 15 is clearly legible" and the ALJ should have therefore considered whether limiting her to pushing, pulling, or carrying 15 pounds was appropriate at any duration or frequency.  (ECF No. 13, PageID.1407–08).

The Court disagrees.  The ALJ (and apparently Plaintiff and this Court) was unable to discern what limitation Dr. Lazzara was opining.  He therefore dismissed it as unpersuasive.  This is sufficient and the ALJ need not further dissect it and parse out whether a 15-pound limitation was warranted for any duration of frequency.  *See, e.g.*, *Katelyn M. v. Comm'r of Soc. Sec.*, No. 23-cv-12276, 2024 WL 4124675 (E.D. Mich. Sept. 9, 2024) ("[A]n ALJ can properly discount the weight of an expert opinion when it is too vague and does not support specific functional limitations."); *Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 434 (6th Cir. 2018) (affirming ALJ's conclusion where discounted doctor's opinion was "quite vague").

Additionally, as the Commissioner notes, the ALJ *did* assess whether and to

26

what extent Plaintiff could push, pull, or carry.  The ALJ limited Plaintiff to light work, which involves lifting no more than 20 pounds with frequent lifting or carrying up to ten pounds.  20 C.F.R. § 404.1567(b).  The ALJ based this limitation, in part, on the administrative medical findings, the prior ALJ's findings, and the current medical evidence of record.  (ECF No. 7-1, PageID.51–52).  Plaintiff does not challenge this and there is thus substantial evidence to support the ALJ's finding that she can perform the requirements of light work with additional limitations.  *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.").

Plaintiff also argues the ALJ's treatment of Dr. Lazzara's opinion was contradictory because he found one restriction not persuasive but then found that further restrictions were required.  (ECF No. 16, PageID.1441–42).  There is nothing inherently illogical with finding one illegible and vague restriction unpersuasive while also finding that Plaintiff was more restricted in other areas than opined.  *See Mosed v. Comm'r of Soc. Sec.*, No. 14-cv-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) ("Plaintiff's argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State agency consultants is curious and unavailing." (emphasis in original)), *report and recommendation adopted*, 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016).  The ALJ's conclusion clearly discounted Dr.

Lazzara's push/pull/carry limitation *first*, and *then* found the rest of the opinion partially persuasive. Plaintiff's contention that the ALJ found further restrictions necessary and then ignored one of Dr. Lazzara's opined restrictions is without merit.

Finally, Plaintiff argues a 15-pound restriction is supported by and consistent with the record evidence. But this is an improper attempt to have the Court reweigh the evidence. *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. 2022) (holding plaintiff's arguments regarding the supportability and consistency factors were "veiled attempts" to circumvent the substantial evidence standard and are "classic examples of invitations to reweigh the evidence and to find other medical opinions more persuasive"). The question is not whether the evidence could support a 15-pound restriction but whether substantial evidence supports the ALJ's restrictions. As discussed above, it does. Therefore, Plaintiff has not shown that the ALJ erred in limiting her to light work with additional restrictions.

### 2. Subjective testimony

Next, Plaintiff argues the ALJ improperly rejected her testimony about her subjective symptoms by relying only on boilerplate language. (ECF No. 13, PageID.1411). The Court disagrees.

According to SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements with other record evidence, considering his or her testimony about pain or other symptoms with the rest of the relevant evidence in the record and

other factors.  SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  This analysis and the conclusions drawn from it—formerly termed a credibility determination—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The regulations establish a two-step process for evaluating subjective symptoms, including pain.    20 C.F.R.  § 404.1529(a);  SSR 16-3p,  2016 WL 1119029, at *2.  The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists.   The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029, at *2; *Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994).  The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms.  SSR 16-3p, 2016 WL 1119029, at *6.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled."  20 C.F.R. § 404.1529(a).  The absence of objective, confirming evidence obligates the ALJ to consider the

following factors:

> (i) [D]aily activities;
> (ii) The location, duration, frequency, and intensity of . . . pain;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . take[n] to alleviate . . . pain or other symptoms;
> (v) Treatment, other than medication, . . . received for relief of . . . pain . . . ;
> (vi) Any measures . . . used to relieve . . . pain; and
> (vii) Other factors . . . .

20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039–40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility" as long as the assessment is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Saunders v. Kijakzi*, No. 20-cv-12210, 2022 WL 885838, at *3 (E.D. Mich. Mar. 25, 2022) ("'It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant'" (quoting *Rogers.*, 486 F.3d at 247)).

Specifically, Plaintiff takes issue with the ALJ using the following language:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this

30

decision.

(ECF No. 7-1, PageID.48).  True, this is boilerplate language used in almost every ALJ decision.  *See Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015).  And it is also true that courts have found this boilerplate language insufficient—on its own—"because it 'yields no clue to what weight the trier of fact gave the testimony'" or failed to link to evidence in the record or tailor the paragraph to the facts at hand.  *Bowers v. Colvin*, No. 13-cv-14875, 2015 WL 12675023, at *14 (E.D. Mich. Oct. 14, 2015) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 644–46 (7th Cir. 2012)).  However, the "chief concern with the popularity of this template . . . is the risk that an ALJ will mistakenly believe it sufficient to *explain* a credibility finding, as opposed to merely introducing or summarizing one."  *Cox*, 615 F. App'x at 260.  Thus, using this boilerplate is not error when the ALJ "provide[s] a 'thorough explanation elsewhere of his reasons for doubting [the claimant's] account.'"  *Id.* (quoting *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)); *see also Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 174 (6th Cir. 2016) ("[U]sage of the template to introduce the ALJ's credibility finding is not by itself erroneous.  Here, the ALJ provided an adequate explanation of the adverse credibility finding, pointing to, among other things, Sorrell's inconsistent statements, and her failure to provide medical evidence supporting her claims regarding the intensity and pervasiveness of her pain.").

31

Here, the ALJ did not simply rely on boilerplate language in rejecting Plaintiff's testimony.  Instead, he used the language to introduce and summarize his findings.  The ALJ discussed, among other things, Plaintiff's conservative treatment (and the success and relief reported from these treatments); her activities of daily living; her provider being unwilling to continue to write notes for Plaintiff being off work due to lack of documentation from pain management or neurology (who also refused to write her off work); and her stable, largely normal, and unremarkable treatment and examination records.  (ECF No. 7-1, PageID.48–51).  This was sufficient.  *See Robert R. v. Comm'r of Soc. Sec.*, No. 23-cv-10989, 2024 WL 4481175, at \*17 (E.D. Mich. Aug. 6, 2024) (finding treatment records sufficient to discredit plaintiff's testimony), *report and recommendation adopted*, 2024 WL 4235473 (E.D. Mich. Sept. 18, 2024); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 477 (6th Cir. 2016) (discussing inconsistency in taking medication, activities of daily living, and responding well to treatment substantial evidence to support ALJ's credibility determination).

Plaintiff then argues why her testimony is supported by and consistent with other medical evidence.  (ECF No. 13, PageID.1413–15).  Again, this is an impermissible attempt to get the Court to reweigh the evidence.  The ALJ's reasoning is supported by substantial evidence and will not be disturbed.  Plaintiff has failed to show error and her motion for summary judgment is thus denied.

## III.   <u>ORDER</u>

For these reasons, Plaintiff's motion (ECF No. 13) is **DENIED**, the Commissioner's motion (ECF No. 15) is **GRANTED**, and the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Date: May 20, 2026

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

33